# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## FORT MYERS DIVISION


ELIZABETH GUTIERREZ

                    Plaintiff,

vs.                                                         CASE NO: 2:10-CV-720-FTM-SPC

MICHAEL J. ASTRUE
Commissioner of Social Security,

                    Defendant.

_____


## ORDER

       This matter comes before the Court on the Plaintiff Elizabeth Gutierrez's Complaint Seeking Review of the Final Decision of the Commissioner of Social Security (Commissioner) denying the Plaintiff's Claim for Disability Insurance (Doc. # 1) filed on December 1, 2010, in the Middle District of Florida, Fort Myers Division.  A Consent form (Doc. #15) was signed by the parties indicating their agreement for jurisdiction in this matter to be exercised by the United States Magistrate Judge.  The parties' consent was approved by the District Court on March 31, 2010.  Doc. #16). The Plaintiff filed his Memorandum of Law in Opposition to the Commissioner's Decision (Doc. #23) on July 12, 2011.   The Commissioner filed the Memorandum of Law in Support of the Commissioner's Decision (Doc. #24) on September 12, 2011.   Thus, the Motion is now ripe for review.

       The Undersigned has reviewed the record, including a transcript of the proceedings before

the Administrative Law Judge (ALJ), the exhibits filed and administrative record, and the pleadings and memoranda submitted by the parties in this case.

## FACTS

### *Procedural History*

The Plaintiff filed an application for a period of Disability and Disability Insurance Benefits in 1991, and on February 11, 1993, and the Commissioner found Plaintiff disabled beginning January 15, 1990. (Tr. 14, 338, 352-55). On February 17, 2005, the Commissioner determined Plaintiff was no longer disabled as of February 1, 2005. (Tr. 14). The Commissioner denied Plaintiff's claim on reconsideration and Plaintiff requested a hearing before the Administrative Law Judge ("ALJ"), which was held on March 10, 2009. (Tr. 40-51, 487-516). On June 1, 2009, the ALJ issued a decision that Plaintiff's disability ended effective February 1, 2005. (Tr. 14-26). The Appeals Council denied the Plaintiff's Request for Review. (Tr. 3-5). Therefore, the decision of the Commissioner became final. Having exhausted all administrative remedies, the Plaintiff timely filed a Complaint with this Court.

### *Plaintiff's History*

The Plaintiff was born on May 27, 1961, making the Plaintiff 48 years of age at the time of the ALJ's decision. (Tr. 352). The Plaintiff has a high school education. (Tr. 360). The Plaintiff does not have any past relevant work history. (Pl. Brief, Doc. #24, p.3). The Plaintiff alleges continued disability due to complications from gastric bypass surgery, back pain, and headaches. (Tr. 491).

### *Medical and Psychological History*

On March 27, 2001, Plaintiff saw Dr. Daniel Hamaty and reported severe back pain from the

herniated disc that she suffered in the thoracic spine from a car accident that occurred in 1989. (Tr. 45, 347). The medical records reflected that she had severe pain behavior and was also very obese, weighing 251 pounds at a height of 67.25 inches. (Tr. 45). The Plaintiff's most current examination records at this time reflected that she had restriction in motion in her back and hips secondary to pain and obesity. (Tr. 45). Plaintiff also had left ACL and PCL laxity with back bending of both knees. (Tr. 45). Plaintiff's straight leg raise test was painful and positive in the supine position at 30 degrees and seated position at 70 degrees. (Tr. 45). The Plaintiff was able to ambulate without an assistive device but her gain was guarded and her stance was obese. (Tr. 45). The physician reported that there was no evidence of muscle atrophy and reflexes were intact. (Tr. 45). The Plaintiff had a normal alignment of the spine with symmetrical pelvic motion. (Tr. 45). Plaintiff's grip strength on the left and right was 60/50 and she was able to perform fine motor functions. (Tr. 45).

In June of 2004, Plaintiff underwent gastric bypass surgery for treatment of morbid obesity which resulted in weight loss of 123 pounds by August 2005 and a total weight loss of 140 pounds by May 2006 with reports of reduction in knee pain. (Tr. 281). Plaintiff did have some brief complications following the surgery including an internal hernia and a case of colitis with nausea and vomiting which required brief hospitalization. (Tr. 240).

In January of 2005, Plaintiff suffered an ankle strain which caused her subjective symptoms of instability and persistent ankle pain. (Tr. 68).

In March of 2005, after attempts at more conservative treatment failed, Plaintiff underwent left ankle arthroscopy for repair of a ligament tear and synovitis that occurred due to the ankle sprain. (Tr. 78). Plaintiff's postoperative follow up notes from June 2005 indicated that the Plaintiff was recovering well with the exception of a little stiffness and minimal swelling. (Tr. 79). Just three

months after the surgery, Plaintiff only lacked about 10 degrees in range of motion. (Tr. 79).

On May 10, 2006, Plaintiff saw Dr. George Ferguson, who indicated that Plaintiff had lost 140 pounds secondary to the gastric bypass. (Tr. 45). She was seen for follow up of incisional hernia repair and reported pain below the repair site. (Tr. 45). Plaintiff was 67 inches tall and 167 pounds. (Tr. 81). The medical records indicated that the Plaintiff's motor function, reflexes, and sensory exams were all within normal limits and did not indicate any difficulty with gait or ambulation. (Tr. 81). The records also indicated that the Plaintiff only had minimal signs of back pain at this time, specifically some occasional muscle spasms, which were treated with a prescription for Flexeril and a TENS unit with reported relief of pain. (Tr. 81). Plaintiff's records reflected that the pain medications that she was using at this time were over the counter non-narcotic medications Aleve and Tylenol. (Tr. 102).

On January 4, 2007, Plaintiff was involved in another motor vehicle accident. (Tr. 116). Due to this accident, Plaintiff saw Dr. Ferguson on January 9, 2007, complaining of backache. (Tr. 45). Plaintiff described the pain as starting in the left neck and radiating down her entire back to buttock. (Tr. 45). Upon examination, Plaintiff had no tenderness over the spine but did have some muscle tenderness on the left side of the neck with spasm. (Tr. 116). The Plaintiff's treating provider prescribed her Ultracet and recommended continued use of the TENS and hydrocolator. (Tr. 116). The Plaintiff was subsequently treated with conservative physical therapy modalities for cervical/thoracic/lumbar strain with limited relief and underwent some injections. (Tr. 127-41, 185). Plaintiff also reported left leg numbness and the physician diagnosed her with acute back pain. (Tr. 45).

In January of 2007, Plaintiff was diagnosed with an adjustment disorder with mixed anxiety

and depression. (Tr. 17, 196b). Plaintiff's records reflect normal mental status checks by her treating provider with no evidence of deficits noted in memory or concentration despite some feelings of anxiety and depressed mood. (Tr. 197-99, 212a). Plaintiff was treated with routine psychotropic medications by her primary care provider, and she required no other psychiatric treatment, such as hospitalization or intensive therapy. (Tr. 212a).

At the time of the disability review hearing in June 2007, the Plaintiff testified about her current impairments since a vehicle accident in January 2007 that caused her chronic neck, thoracic, and low back pain for which she took Hydrocodone once to twice a week. (Tr. 18). At the time of the hearing before the ALJ, Plaintiff testified that her current complaints were worse than they were back in 2005. (Tr. 505).

In 2008, Plaintiff had MRI studies performed. (Tr. 165-66, 170). There was no evidence of any significant disc degeneration in either the lumbar and cervical spine based on the MRI studies and the spinal canal and neural foramina were present at all levels. (Tr. 165-66, 170). The consulting provider described the MRIs as "fairly normal." (Tr. 164).

### *Administrative Law Judge's Decision*

Upon consideration of the record, the Administrative Law Judge (ALJ) found that the most recent favorable medical decision finding that the claimant continued to be disabled was the determination dated March 27, 2001, known as the "comparison point decision" or CPD. (Tr. 15). At the time of the CPD, the claimant had the following medically determinable impairments: Chronic Back Pain; Obesity; Knee Pain and Internal Derangement of Left Knee. (Tr. 16). These impairments were found to result in the residual functional capacity of less than a full range of sedentary work. (Tr. 16). On February 1, 2005, the Plaintiff had not engaged in substantial gainful

activity. (Tr. 16). The medical evidence establishes that, as of February 1, 2005, the Plaintiff had the following medically determinable impairments: Disc Herniation (Thoracic Spine) with Back Pain; Status Post Gastric Bypass Surgery with Incisional Hernia Repair; and Status Post Ankle Sprain with Synovitis. (Tr. 16). However, the Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments of 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1525 and 404.1526). (Tr. 16). Medical improvement occurred as of February 1, 2005. (Tr. 17). As of February 1, 2005, the impairments present at the time of the CPD had decreased in medical severity to the point where the claimant had the residual functional capacity to perform light work, as defined by 20 CFR 404.1567(b). (Tr. 18). The Plaintiff's medical improvement is related to the ability to work because it resulted in an increase in the Plaintiff's residual functional capacity (CFR 404.1594(c)(3)(ii)). (Tr. 20). As of February 1, 2005, the claimant continued to have a severe impairment or combination of impairments (20CFR 404.1594(f)(6)). (Tr. 20).

After careful consideration of the entire record, the ALJ concluded the Plaintiff has a residual functional capacity to perform less than a full range of light work as defined in 20 CFR 404.1567(b) because she is limited to performing lifting and carrying of 10 pounds frequently, 20 pounds occasionally; sitting for 6 hours of an 8 hour work day with alternating sitting and standing positions every 30 minutes; standing/walking for 6 hours of an 8 hour work day; and performing simple, routine, and repetitive tasks in a competitive environment on a sustained basis. (Tr. 20). The ALJ also concluded that the Plaintiff has no relevant past work. (Tr. 24). The Plaintiff was born on May 27, 1961, and on February 1, 2005, the Plaintiff was 43 years of age, which is defined as a younger individual age 18-49. (Tr. 25). The Plaintiff has at least a high school education and is able to

communicate in English. (Tr. 25). The ALJ determined transferability of job skills was not an issue because the Plaintiff does not have past relevant work. (Tr. 25). Considering the Plaintiff's age, education, work experience, and residual functional capacity based on the impairments present as of February 1, 2005, and the investigation conducted by the Social Security Administration, the Plaintiff was able to perform a significant number of jobs in the national economy (20 CFR 404.1560(c) and 404.1566). (Tr. 25). Therefore, the Plaintiff's disability under sections 216(i) and 223(f) of the Social Security Act ended as of February 1, 2005. (Tr. 26).

## THE STANDARD OF REVIEW

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards, and whether the findings are supported by substantial evidence. Hibbard v. Commissioner, WL 4365647 *2 (M.D. Fla. December 12, 2007) (citing Richardson v. Perales, 402 U.S. 389, 390, 91 S. Ct. 1420, 28 L. Ed 2d 842 (1971); McRoberts v. Bowen, 841 F.2d 1077, 1080 (11th Cir. 1988)). The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence is more than a scintilla-*i.e.*, the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion." Hibbard, WL 4365647 *2 (citing Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing Walden v. Schweiker, 672 F.2d 835, 838 (11th Cir. 1982)); Richardson, 402 U.S. at 401.

Where the Commissioner's decision is supported by substantial evidence, the District Court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. Phillips v. Barnhart, 357 F.3d 1232, 1240 n. 8 (11th Cir. 2004). The District Court must view the evidence as

a whole, taking into account evidence favorable as well as unfavorable to the decision. <u>Foote</u>, 67 F.3d at 1560; <u>Lowery v. Sullivan</u>, 979 F.2d 835, 837 (11th Cir. 1992) (holding the court must scrutinize the entire record to determine reasonableness of factual findings).

The court "may not decide the facts anew, reweigh the evidence or substitute it's judgment for that of the [Commissioner]." <u>Phillips</u>, 357 F.3d at 1240 n. 8; <u>Dyer v. Barnhart,</u> 357 F.3d 1206, 1210 (11th Cir. 2005). If the Commissioner's decision is supported by substantial evidence, it should not be disturbed. <u>Lewis v. Callahan</u>, 125 F.3d 1436, 1440 (11th Cir. 1997).

A termination of previously awarded disability benefits is governed by 42 U.S.C. § 423(f), which provides in relevant part that benefits may only be terminated if there is substantial evidence to support a finding of medical improvement related to an individual's ability to work and the individual is now able to engage in substantial gainful activity. 42 U.S.C. § 423(f).

The Commissioner has established an eight step sequential process used to determine whether medical improvement has occurred and whether a claimant's disability benefits should cease. 20 C.F.R. § 404.1594(f). The *first* question is whether the claimant is engaged in substantial gainful activity. <u>Id.</u> If not, the *second* question is whether the claimant has an impairment or combination of impairments which meets or equals the severity of an impairment in the Listings. <u>Id.</u>

If the claimant's impairments do not meet or equal a listed impairment, the *third* step is to determine whether there has been medical improvement. <u>Id.</u> Medical improvement is defined as "any decrease in the severity of your impairments which was present at the time of the most recent favorable medical decision . . . ." 20 C.F.R. § 1594(b)(1). If so, the *fourth* question is whether the claimant's improvement is related to his or her ability to work based upon the claimant's residual functional capacity. <u>Id.</u> The *fifth* question is whether any exceptions apply under subsections (d)

(relating to advances in medical treatments and/or therapies that may have improved a claimant's condition, etc.) and (e) (relating to the prior determination of disability being found in error or was fraudulently obtained, etc.). Id.

At the *sixth* step, if it has been determined that there has been medical improvement, it must then be determined whether all the claimant's *current* impairments in combination are severe. Id. (emphasis added). If it is found that the claimant's current impairments are severe, it must then be determined, at the *seventh* step, whether given current impairments, the claimant is able to engage in the type of work he or she had done in the past. Id.

At the *eighth* and final step, if the claimant is not able to engage in the type of work done in the past, the SSA must consider, given the claimant's current impairments, age, education, and past work experience, whether the claimant is able to engage in other substantial gainful activity. Id.

## **DISCUSSION**

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 416 (I), 423 (d)(1); 20 C.F.R. § 404.1505. The impairment must be severe, making the claimant unable to do his or her previous work, or any other substantial gainful activity which exists in the national economy. 42 U.S.C. § 423 (d)(2); 20 C.F.R. §§404.1505 - 404.1511. The court "may not decide the facts anew, reweigh the evidence or substitute it's judgment for that of the [Commissioner]." Bloodsworth, 703 F.2d at 1239. If the Commissioner's decision is supported by substantial evidence, it should not be disturbed. Lewis, 125 F. 3d at 1440.

The Plaintiff argues the case should be remanded because the ALJ failed to pose an adequate

hypothetical question to the Vocational Expert. The Government Defendant argues the ALJ's decision was based upon substantial evidence and he adequately articulated his reasoning in his decision.

*Whether at Step 8 of the Cessation of Benefits Standard the ALJ  Properly Found that Plaintiff Could Engage in Other Substantial Gainful Activity*

The Plaintiff argues essentially that the ALJ failed to meet his burden at Step 8 of the cessation of benefits standard by relying upon testimony elicited from an inadequate hypothetical question. Specifically, Plaintiff argues that the ALJ's hypothetical failed to include the limitation for simple, routine, repetitive tasks.

The Plaintiff states the ALJ improperly based her determination that there were a significant number of jobs in the national economy that the Plaintiff can perform on an inadequate hypothetical question. As grounds for her assertion, the Plaintiff argues the ALJ failed to pose a hypothetical question to the vocational expert that was consistent with the determination that Plaintiff could only perform simple, routine, and repetitive tasks. (Pl. Brief, Doc. #23, p. 9). And that the jobs the vocational expert enumerated on required more detail and complexity than simple, routine, and repetitive tasks. (Pl. Brief, Doc. # 23, p. 9). The Commissioner agrees that the ALJ did not provide those limitations in her hypothetical question presented to the VE. But points out that Plaintiff's counsel, on folllow-up questioning, specifically asked the VE to consider the ALJ's hypothetical limiting Plaintiff to light work with occasional overhead and needing to shift positions 30 minutes along with the ability to perform simple, routine, repetitive tasks. (Tr. 507-08).

Hypothetical questions asked by the ALJ to the vocational expert must describe comprehensively the claimant's impairments. <u>Loveless v. Massanari</u>, 136 F. Supp. 2d 1245, 1250

(M.D. Ala. 2001) (citing <u>Pendley v. Heckler</u>, 767 F.2d 1561, 1563 (11th Cir. 1985) (*per curiam*)). If the hypothetical question upon which the vocational expert bases his evaluation does not assume all of a claimant's impairments, the decision of the ALJ denying a claimant's applications for disability insurance benefits, which is based significantly on the expert testimony, is not supported by substantial evidence. <u>Loveless</u>, 136 F. Supp. 2d at 1250. Notwithstanding, the foregoing general standard, the hypothetical question posed by the ALJ may omit non-severe impairments. <u>Id.</u>

When using a VE, the ALJ must pose hypothetical questions to the VE to determine whether someone with the same limitations as the claimant will be able to secure employment in the national economy. <u>Humphries v. Barnhart</u>, 183 Fed. Appx. 887, 891 (11th Cir. 2006) (citing <u>Phillips</u>, 357 F.3d at 1239). That hypothetical question must include "all of the claimant's impairments." <u>Humphries</u>, 183 Fed. Appx. at 891 (citing <u>Wilson v. Barnhart</u>, 284 F.3d 1219, 1227 (11th Cir. 2002)); <u>Jones v. Apfel</u>, 190 F.3d 1224, 1229 (11th Cir. 1999) *cert. denied*, 120 S. Ct. 1723, 146 L. Ed. 2d 664 (2000).

In this case, the ALJ initially posed the following scenario to the vocational expert:

> If we had a younger individual with a high school education who was limited to light work activities . . . only occasional reaching overhead and needed to shift positions every 30 minutes between sitting and standing.

(Tr. 505-06). Then the Plaintiff's counsel instructed the vocational expert to:

> [A]ssume the first hypothetical and disregard the one I gave you earlier, just add the following: <u>the person would be able to perform simple, routine, repetitive tasks</u> that did not require meeting accuracy and precision standards. In other words, they would not be able to meet accuracy and precision standards as a result of side effects of medication but they could do jobs that didn't require accuracy and precision.

(Tr. 507-08) (emphasis added). In response, the VE stated Plaintiff would be able to perform the jobs

of a clerical cashier and assembly person. (Tr. 508). Thus, contrary to the Plaintiff's argument, the Plaintiff's counsel, on follow-up questioning, specifically asked the VE to consider the ALJ's hypothetical limiting Plaintiff to light work with occasional reaching overhead and needing to shift positions 30 minutes, along with the ability to perform simple, routine, repetitive tasks. (Tr. 507-08). Thus, the ALJ's failure to include simple, routine, repetitive tasks in his hypothetical question is at most harmless. See Graham v. Apfel, 129 F.3d 1420, 1423 (11th Cir. 1997); PDK Labs, Inc. v. United States DEA, 362 F.3d 786, 799 (D.C. Cir. 2004) ("If the agency's mistake did not affect the outcome, if it did not prejudice the petitioner, it would be senseless to vacate and remand for reconsideration"); see also N.L.R.B. v. Wyman-Gordon Co., 394 U.S. 759 n.6 (1969) (when "remand would be an idle and useless formality," courts are not required to "convert judicial review of agency action into a ping-pong game.") The VE was able to identify a number of jobs that Plaintiff would be able to obtain with the limitations posed by Plaintiff's counsel. Even though the ALJ did not use the same exact wording as the Plaintiff's Counsel, Plaintiff was given the opportunity to pose a preferred hypothetical to the VE and allow the ALJ to hear the VE's response. Therefore, Plaintiff's argument that the ALJ's hypothetical was inadequate is not well taken.

Furthermore, all of the unskilled jobs identified by the VE in response to the ALJ's hypothetical would not be precluded by adding simple, routine, repetitive tasks. Unskilled work involves work that needs little or no judgement to do simple duties that can be learned on the job in a short period of time. See 20 C.F.R. §§ 404.1568(a), 416.968(a). To the extent the Plaintiff objects to the ALJ's use of "light, unskilled", rather than "simple, routine, and repetitive", this argument lacks merit. Thus, the ALJ appropriately included limitations found to be supported by the record. The unskilled jobs identified by the VE are consistent with simple, routine, repetitive tasks.

Plaintiff also argues that the jobs posed by the VE in response to the hypothetical were not in line with Plaintiff's educational level. This contention is not consistent with the evidence presented. Plaintiff testified that she graduated from high school (Tr. 492), and the VE was instructed to assume this educational level in the hypothetical. (Tr. 505). Therefore, Plaintiff has not shown that the educational level is inconsistent with the hypothetical nor the jobs provided by the VE with GED requirements.

The ALJ only had to submit to the VE those limitations that were credible and supported by objective evidence of record. See McSwain v. Bowen, 814 F.2d 617, 620 n.1 (11th Cir. 1987) (holding the ALJ did not have to include limitations he found not credible in the hypothetical). A review of the record reveals that the hypothetical posed by the ALJ to the vocational expert represented all the credible impairments determined to exist by the ALJ. Therefore, the hypothetical was comprehensive and encompassed Plaintiff's impairments as well as the limitations. Therefore, the ALJ's decision was supported by substantial evidence. If the Commissioner's decision is supported by substantial evidence, it should not be disturbed. Lewis, 125 F.3d at 1440.

Accordingly it is hereby

**ORDERED**:

The decision of the Commissioner is **AFFIRMED.** The Clerk of the Court is hereby directed to issue a judgement consistent with this ruling and to thereafter close the file.

**DONE AND ORDERED** at Fort Myers, Florida, this  12th  day of October, 2011.

SHERI POLSTER CHAPPELL
UNITED STATES MAGISTRATE JUDGE

Copies: Counsel of record